Mansoura Kassar *vs.* Benjamin Ambaragocy, *Ex.*

NOVEMBER 19, 1943.

Present: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Flynn, C. J. This is a petition for relief under general laws 1938, chapter 535, § 6. That section provides, among other things: "When any person is aggrieved by any order, decree . . . of any probate court . . . and from accident, mistake, unforeseen cause . . . has failed to claim or prosecute his appeal . . . the supreme court, if it appears that justice requires a revision of the case, may, upon petition filed within one year after the entry of such order, decree . . . allow an appeal to be taken and prosecuted . . . upon such terms and conditions as the court may prescribe."

The petition alleges substantially that the petitioner Mansoura Kassar, alias Mansoura El-Kassar, is a sister of David George, alias David Kassar, of Mardine, Turkey; that said

David George died a resident of the city of Central Falls in this state; that on April 28, 1942 the probate court by its decree admitted to probate an instrument purporting to be his last will and testament; that the petitioner was aggrieved by said decree but, by reason of accident, mistake and unforeseen cause, did not take an appeal therefrom within the time provided by law; wherefore she prayed that, by virtue of the statute, she be allowed to file an appeal from that decree. This petition, signed by an attorney on behalf of the petitioner, was filed within a year after the entry of the decree in question. Affidavits and other letters or documents bearing on relevant facts have been filed in support of the petition and a counter-affidavit has been filed by the respondent's attorney.

It is not disputed that David George died in Central Falls on March 31, 1942; that the petition for probate of an instrument purporting to be the deceased's will indicated that he left no known heirs or relatives; that such will, by its terms, gave all his property to his landlord, this respondent, who was a stranger in blood; that this instrument, after hearing, was admitted to probate on April 28, 1942 as the last will of David George; that an appeal therefrom was claimed by the attorney on behalf of Sodae El-Kassar and Mary Abdel Masih El-Hagger, mother and sister, respectively, of the testator; and that reasons of appeal were filed in the superior court within the statutory period. It also is undisputed that on March 12, 1943, upon motion of this respondent, such appeal was there denied and dismissed on the ground that it was claimed without authorization of the ostensible appellants; that no exception to this ruling was prosecuted by those appellants; and that a final account in the estate was filed by the executor, but by consent of respondent was not to be acted upon until the expiration of a year after the entry of the decree admitting the will to probate.

Within that year the attorney for the petitioner, who had made many unsuccessful attempts to locate and to commu-

nicate with the apparent heirs and next of kin of David George, received from Cemil Vafi, Turkish consul general in New York City, a written entry of appearance in the cause on behalf of the petitioner and certain other Turkish nationals "who may be heirs at law of the late David George". He also conferred on such attorney full power to prosecute said cause to its final completion or in lieu thereof to its final settlement. Pursuant thereto, on April 28, 1943, the attorney filed the instant petition on behalf of David George's sister Mansoura, who had not been named as one of the appellants in the original appeal from the decree in question.

Nothing in the record shows that David George was ever naturalized as a citizen of the United States from the time he entered the country from Turkey. It is not seriously contended that the petitioner is not a sister of the deceased or that she is not a national of Turkey, resident outside of the United States. Other relevant facts appeared in the affidavits and letters. One of these letters was written in the Arabic language and a translation thereof for our benefit was obtained and filed by the attorneys in the case.

The respondent contends chiefly that the evidence relied upon by the petitioner is entirely hearsay and not competent for us to consider; that such evidence, if considered, fails "to clearly establish" that petitioner is "an aggrieved person" entitled to invoke the aid of this statute; that neither the attorney nor the consul general of Turkey had authority, directly from the petitioner or otherwise, to enter an appearance or to bring this proceeding in her behalf; and that the petition was not filed within a reasonable time and, as a matter of law, cannot be considered.

We cannot agree with respondent's contention that no hearsay evidence tending to show that petitioner is a person aggrieved by the decree in question may be considered by us in this proceeding. The statute is remedial and should be construed liberally to effectuate its purpose. *Donahue* v. *Sherman's Sons Co.,* 39 R. I. 373; *David* v. *David,* 47 R. I.

304. Such purpose, in our opinion, does not require this court to finally decide the ultimate issues, as if the main case or appeal were being heard on its merits; but rather it vests in this court *discretion* to determine, from all the special facts and circumstances in the case, whether "justice requires" that petitioner be given an opportunity to have a hearing of the case on its merits.

Such a view is indicated by the court in *Donahue* v. *Sherman's Sons Co., supra.* See also *Di Benedetto* v. *Capone,* 48 R. I. 14, 16. In the latter case the court granted relief under this statute, notwithstanding that it expressly stated "nor do we undertake to pass upon the controverted question in the affidavit, *viz.,* whether the Capones assured petitioner that she would be kept posted." Since that question was relevant to the existence of accident, mistake or unforeseen cause, the court's action in those circumstances indicates, at least in effect, that it was not called upon by the statute to decide such issue but was called upon to exercise its discretion in determining from all of the facts what justice required.

Under our view of this type of proceeding, it is expected that a petitioner's interest as "an aggrieved person" will be shown by competent evidence where it is reasonably available. But where, as here, competent evidence of such interest is not reasonably available, because of the same accident, mistake or unforeseen cause that is the basis for seeking relief, and where petitioner's interest in an estate, notwithstanding it is shown only by hearsay evidence, is nevertheless not essentially contradicted and appears to be the true fact, then this court may consider such evidence with other facts in determining what "justice requires". This is particularly true where the petitioner, in order to succeed at any hearing of her appeal on the merits, must there show by competent evidence that she is a person aggrieved by the decree within the meaning of the law.

Nor can we agree with the respondent's contention that the evidence, even if considered, must "clearly establish"

that petitioner is a person aggrieved by the decree in question in order to have any standing under this statute. For such contention respondent relies upon the cases of *King* v. *King*, 35 R. I. 375 and *Primitive Methodist Church* v. *Homer*, 38 R. I. 530, 533. While these cases may hold that the petitioner's interest as "an aggrieved person" must be *shown* by the record, neither of them requires that petitioner must "clearly establish" such fact in order to have a standing under the statute. Neither case uses the words "clearly establish" or even "establish". In the *King* case the uncontradicted evidence showed conclusively that the petitioner had no interest in that estate and therefore could not be, in contemplation of law, a person entitled to claim an appeal from the decree there in question. In the latter case the court said: "It does not appear what kind of a legal entity The Primitive Methodist Church of Rhode Island is". Therefore there was no evidence in the record to *show* that petitioner was any person or legal entity that could be, in contemplation of law, "an aggrieved person".

In the instant case, however, it appears from the evidence that the petitioner is a sister of the testator and resides outside of the United States; that the petition for probate of David George's will stated substantially that the deceased left no known heirs or next of kin, whereas the translation of the letter written in Arabic, the authenticity of which is not denied, states "tell the court that the deceased has a brother in Corimba (Brazil) named Bahda, and two sisters in Mardine and Amoda, who are the true heirs"; and also that the petitioner had written to the Patriarchate to claim her share as a beneficiary in David George's estate, which they understood was in the court. By inference from these assertions the mother and father of David George appear to have deceased. These facts are not essentially contradicted by evidence and therefore show, at least *prima facie,* that the petitioner had sufficient interest in deceased's estate to be treated, for the purposes of the proceeding here, as a person aggrieved by the decree in question.

The respondent next contends that neither the attorney acting for petitioner nor the Turkish consul general in New York had any authority, from the petitioner or from any other proper source, to institute these proceedings in her behalf. Certain facts, however, support inferences to the contrary. There appears in the evidence the above-mentioned letter that was written in the Arabic language. It was written, at the direction of the Patriarch of Antioch, by his Vicar at Homs, Syria, on behalf of the petitioner to acquaint the court with certain facts in connection with David George's estate.

This letter, after referring to the death of David George and the fact that his estate was believed to be in the court, stated substantially that the deceased had no relatives in the United States; that the petitioner, her sister Mary and her brother Bahda were the only true heirs and beneficiaries of the deceased, if he had died intestate. It further stated that one of the sisters in Mardine, Turkey, had "made the necessary papers in the Turkish government and sent them to the American Embassy, and the second sister is in Amoda, in Mesopotamia, has written to the Patriarchate in order to get her share from the legacy." It then asked the addressee to inform the court of these and other relevant facts and to notify the writer what papers the court would require so that the petitioner could obtain her share of the estate.

Considering this letter, and the consul general's affidavit to the effect that it was impossible "to communicate and receive a reply to any such correspondence" from Mansoura El-Kassar because of "the war conditions and the difficulty in mail transit between the United States and Turkey", it is not unreasonable to believe that the beneficiaries wanted to claim their interests in the estate; that certain attempts had been made to authorize the protection thereof; and that through accident, mistake or unforeseen cause, as asserted, the "necessary papers" to that effect had not as yet been received by the consul general. Assuming these uncontradicted facts to be true, the consul general would appear

to have some color of authority to act for the petitioner until the contrary appeared. At least for the purposes of this proceeding, he would not appear to be a mere volunteer or intermeddler.

Moreover, all the special facts and the natural inferences therefrom should be considered in connection with whatever rights may be inherent in the consul general's office. It is generally conceded, by comity and under international law, that a consular officer has the right, by virtue of his office, to act as provisional conservator of the estates of his countrymen dying within his consular district; and that he has the right and duty, conformably to the local law, to guard and protect such estates against wastage or loss. The law to this extent is recognized substantially by the state department of the United States in a letter which appears in evidence for the respondent.

In the instant case the consul general is not seeking any right to seize or to administer or to settle the estate of his deceased countryman; nor to obstruct or to supersede the provisions of the local law. On the contrary, he is merely seeking to *intervene* in a cause to the extent of asking that the validity of the purported will of his deceased countryman be tested according to the local law, thereby protecting that estate against possible wastage or loss, and also preserving the legal rights of apparent heirs and next of kin who are outside this country. Such action would seem to be in aid of and in conformity with the local law, and to come within the rights and privileges inherent in the consular office. When the nature and extent of his intervention are considered with the other special facts and circumstances appearing in the evidence, we think that the petitioner's apparent interest in David George's estate and the existence of accident, mistake or unforeseen cause have been shown sufficiently to warrant our granting her a day in court, when all the material issues may be fully litigated and decided upon their merits. This view makes it unnecessary to consider other arguments by respondent in connection with the

possible rights of the consul general to enter his appearance.

Finally, we cannot agree with the respondent's last contention that the petition was not filed within the time permitted by law. The language of the law is plain. It gives a petitioner one year after the entry of the decree within which to file such a petition. This petition was so filed. We recognize, as respondent contends, that certain delays in filing might affect the settlement of estates and that the policy of the law is to prevent such delays, so far as reasonably possible; and also that the legislature has shortened the period within which a final account may now be rendered in the probate court. The statute in question, however, has not been correspondingly amended and the other elements above mentioned can always be considered by us without going to the extreme of the respondent's contention.

No case has been cited, and we have found none, where the statute was construed to mean that, as a matter of law, such a petition may not be considered unless it has been filed within a reasonable time, interpreted by respondent as forty days, after discovery of the accident, mistake or unforeseen cause. We think that, as a matter of law, such a petition must be filed within one year after the entry of the decree; but that any long and unexplained delay in filing it is an element which this court may consider in determining whether "justice requires" the exercise of our discretion in favor of a petition. See *Lincoln* v. *McCrillis,* 58 R. I. 158. In the instant case we find no such unreasonable and unexplained delay.

Upon consideration of all the special facts and circumstances, and specifically refraining from deciding the merits of any controverted issue that is material to the successful prosecution of the petitioner's appeal, when it is heard on its merits in the superior court, the petition for relief is granted.

It is ordered that the petitioner may file in the office of the clerk of the probate court of the city of Central Falls,

422

a claim of appeal to the superior court and a request for a certified copy of said claim and the record of the proceedings appealed from, on or before December 29, 1943; and, on or before January 8, 1944, file in the superior court a certified copy of said claim and record and her reasons of appeal specifically stated.

*George F. Treanor, Joseph T. Witherow,* for petitioner.

*Woolley, Blais & Quinn,* for respondent.